LEONARD *v.* STATE OF INDIANA.

[No. 30,966. Filed January 15, 1968.]

Richard C. Ver Wiebe, of Fort Wayne, for appellant.

John J. Dillon, Attorney General, and Murray West, Deputy Attorney General, for appellee.

LEWIS, C. J.—The appellant was charged with the crime of embezzlement. He appeals from a conviction after a finding of guilty by the Trial Judge. The indictment, omitting the formal parts, reads as follows:

"The Grand Jury of the County of Allen, State of Indiana, upon their oath present that on or about the 3rd day of September 1963, at and in the County of Allen, State of Indiana, said Defendant, Robert E. Leonard, being then and there an attorney at law and employed by Mary L. Knapp as the attorney of record for Mary L. Knapp, Guardian of Carol Ann Jackson, and by virtue of said employment had access to the monies on deposit in the checking account of said Guardian at the Fort Wayne National Bank, Fort Wayne, Indiana, by virtue of then and there having possession of voucher checks drawn on said checking account at said bank and signed in blank, as to the payee, amount of each check and date, by said Guardian Mary L. Knapp, to which monies the said Mary L. Knapp, as Guardian of Carol Ann Jackson, was then and there entitled, the said Robert E. Leonard, while in the said employ of said Mary L. Knapp, unlawfully and feloniously appropriated to his own use and benefit the sum of One Thousand Eight Hundred Fifty Dollars ($1,850.00) belonging to the said guardianship checking account of Mary L. Knapp, Guardian of Carol Ann Jackson, by then and there inserting his name, Robert E. Leonard, as payee, the amount, to wit: One Thousand Eight Hundred Fifty Dollars ($1,850.00), and the date, to-wit: September 3, 1963, on one of said voucher checks, endorsing said voucher check and depositing the same in the personal checking account of the said Robert

E. Leonard, in the Anthony Wayne Bank on the 3rd day of September, 1963, being contrary to the form of statute in such case made and provided."

Leonard was the attorney for a guardian who was acting in the estate of a minor ward. It was the practice of the guardian to sign blank checks drawn on the guardianship account and to deliver the checks to her attorney, the appellant. Leonard would fill in the name of the payee and deliver the checks. On at least one occasion the appellant inserted his own name as the payee, endorsed the check and deposited the same in his own personal checking account, and then withdrew the funds for his own purposes. The check on which Leonard inserted his own name as payee was not intended for him, and was intended for a creditor of the guardianship.

Basically, the appellant raises the following claimed errors:

(1) The decision of the Trial Court is not sustained by sufficient evidence, and is, therefore, contrary to law.
(2) Appellant's rights under the Fourth and Fifth Amendments under the Constitution of the United States were violated.
(3) The Trial Court committed error in sustaining the State's demurrer to appellant's plea in abatement; the plea in abatement claimed error in impaneling the grand jury.

The crime of embezzlement as covered by the indictment is found in Burns' Indiana Statutes, Anno., § 10-1704, (1956 Repl.), and the pertinent parts of this section of the statute are as follows:

"Every . . . attorney . . . having access to control or possession of any money, article or thing of value, to the possession of which his employer is entitled, shall, while in such employment, take, purloin, secrete or in any way whatever appropriate to his own use . . . in whose employment such . . . attorney . . . shall be deemed guilty of embezzlement. . . ."

Appellant contends the State must prove that appellant had possession of the guardian's funds and that the mere posses-

sion of a negotiable instrument does not meet this test, and that appellant, therefore, cannot be guilty of embezzlement, and if he is guilty of any crime it must be an offense connected with a negotiable instrument. Here we find that appellant obtained access to the funds by means of the check signed in advance by the guardian. It is true, appellant did not have actual possession of the funds and could not have embezzled the actual funds. However, the law is well established in Indiana that mere access to the item converted is not sufficient to sustain a conviction for embezzlement, but access coupled with the wrongdoer being in a position of trust and confidence has been held to be sufficient. This Court said in *Colip* v. *State* (1899), 153 Ind. 584, 55 N. E. 739:

"... Something more than mere physical access, or opportunity of approach to the thing, is required. There must be a relation of special trust in regard to the article appropriated, and it must be by virtue of such trust that the servant has access to, or control, or possession of it. ..."

See also *Young* v. *State* (1932), 204 Ind. 331, 183 N. E. 100. In *Warren* v. *State* (1945), 223 Ind. 552, 62 N.E. 2d 624, the appellant was convicted of the larceny of four cans of Prestone. It was alleged he had embezzled the goods rather than having been guilty of larceny. This Court affirmed the conviction saying:

"... Here there was no 'relation of special trust in regard to the article appropriated' which this court in *Colip* v. *State, supra,* said was necessary to an embezzlement. ..."

From the above cases it is clear that proof of access in a situation of confidence and trust with an unlawful conversion of the goods by the entrusted party will sustain a conviction of embezzlement. The attorney-client relationship is certainly one of trust and confidence, and in the case at bar the evidence makes it crystal clear that attorney Leonard had the complete confidence of the client-guardian, and that the client-guardian had on numerous occasions entrusted appellant with

executed checks with blank payees. The appellant abused that confidence and, therefore, brought himself clearly within the doctrine of *Colip* v. *State, supra,* and the succeeding Indiana cases which have sustained this doctrine.

The State of Indiana in the trial of this cause introduced as evidence certain ledger sheets and other written records from the bank where appellant had a checking account. As part of this documentary evidence photo copies of canceled checks drawn on Leonard's account were placed in evidence. At least one of the checks introduced in evidence was signed by the guardian and the appellant had inserted his own name as payee. The appellant now contends that his constitutional rights under the Fourth and Fifth Amendments of the United States Constitution were violated. It is the contention that for the State of Indiana to present in evidence records from appellant's bank violated his guaranteed freedom from illegal search and seizure. He also contends that for the State of Indiana to present photo copies of checks drawn on his account violates his right to freedom from self-incrimination. Appellant takes the mistaken position that the records held by the bank were his records rather than the records of the bank. We must only decide the question of whether the bank lawfully had possession of the records, and appellant does not even contend that all of the documents were not lawfully in the possession of his bank. If the documents were lawfully in the possession of the bank, and they were, then the appellant cannot be held to claim unlawful search and seizure since he did not have possession of the documents. The law in Indiana is well settled that unlawful search and seizure is a personal privilege. *Tyler* v. *State* (1931), 202 Ind. 559, 177 N. E. 197; *May* v. *State* (1953), 232 Ind. 523, 112 N. E. 2d 439. In *Minton* v. *State* (1966), 247 Ind. 307, 214 N. E. 2d 380, this Court said:

"But even if the search were improper, the appellant cannot raise any question as to the legality of the search of property belonging to other persons. . . ."

The foregoing rule applies to the question of self-incrimination which appellant seeks to interpose. Appellant cites *State* v. *Pence* (1909), 173 Ind. 99, 89 N. E. 488, in which case a druggist was charged with selling whiskey without a license. The State attempted to compel him to produce applications made to him by persons desiring to purchase liquors upon which sales were made by him. The Court held that he could not be compelled to produce these records, and this Court said:

"The bill of rights in the Constitution of this State provides: 'No person, in any criminal prosecution shall be compelled to testify against himself.' [Constitution, Art. 1, § 14.]
This constitutional guaranty secures a person against the involuntary production of his private books and papers in response to any process or order of court addressed to him in the character of a witness, as well as against the giving of compulsory testimony in every case where the use of such documentary evidence, or such testimony, may tend to incriminate himself. . . ."

*State* v. *Pence, supra,* has one obvious difference from the case at bar, and that is in the *Pence* case the documents sought by the State of Indiana were in Pence's possession and were his documents, while the appellant Leonard is complaining of documents belonging to the bank, and rightfully and lawfully in the possession of the bank.

In *Remmer* v. *United States* (1953), 205 F. 2d 277, vacated 74 S. Ct. 450, 347 U.S. 227, 98 L. Ed. 654, rehearing granted 75 S. Ct. 288, 348 U.S. 904, 99 L. Ed. 710, re-affirmed 222 F. 2d 720, certiorari granted 76 S. Ct. 63, 350 U.S. 820, 100 L. Ed. 733, the following statement is made:

"Appellant contends that the trial court's order violated the Fourth and Fifth Amendments to the Constitution of the United States. We do not agree. The records given to Semenza were obtained by the Government from third parties rather than from appellant. Use of such records by the prosecution would not violate appellant's constitutional rights, . . . . See Lustig v. United States, 1949, 338 U.S.

74, 78-79, 69 S. Ct. 1372, 93 L. Ed. 1819; Feldman v. United States, 1944, 322 U. S. 487, 492, 64 S. Ct. 1082, 88 L. Ed. 1408; Symons v. United States, 9 Cir., 1949, 178 F. 2d 615. . . ."

In *United States* v. *Wernes* (1946), 157 F. 2d 797, the following statement appears:

". . . It is quite clear from that case that the only papers and effects which the privilege protects are those which are the private property of the person claiming it, or at least in his possession in a purely personal capacity. . . ."

See also *United States* v. *White* (1944), 322 U.S. 694, 64 S. Ct. 1248, 152 A.L.R. 1202, 88 L. Ed. 1542.

Appellant's rights and privileges under the Fourth and Fifth Amendments of the Constitution of the United States were not violated as claimed.

Appellant's last assigned error concerns the method of impanelment of the grand jury. He contends that Burns' Indiana Statutes, Anno., § 4-3304, (1933 Repl.), requires that at one drawing the county clerk is to draw the names of the prospective jurors for both the grand and petit juries. Since this is a mandatory statute, it is appellant's ultimate conclusion that the grand jury was illegally impaneled.

Essentially appellant is attempting to attack the impanelment of the grand jury by stating that they committed error in not selecting the prospective petit jurors, but in no way does he state that the grand jury itself was erroneously selected, nor does he show any bad faih on the part of the jury commissioners. In *Rudd* v. *State* (1952), 231 Ind. 105, 107 N. E. 2d 168, this Court made the following statement:

". . . Since no bad faith was involved, and since appellant did promptly object by proper procedure to the statutory violations, we must determine whether the violations of § 4-3320, Burns' 1946 Replacement, were probably harmful to the substantial rights of appellant. . . ."

In *Butler* v. *State* (1967), 249 Ind. 484, 229 N. E. 2d 471, this Court stated:

". . . The evidence presented by the appellant on his Plea in Abatement failed to show that the omissions of the Jury Commissioners in their statutory duty were in any way tainted with 'bad faith', and appellant did not show that the action of the Jury Commissioners was probably harmful to appellant's substantial rights. It will not be presumed that appellant's rights were prejudiced by the action of the Jury Commissioners in not including names of married women. In the absence of a showing of 'bad faith' or probable harm to the substantial rights of the objecting party, the failure of the Jury Commissioners to perform their statutory duty does not invalidate the indictment. *Harrison* v. *State* (1952), 231 Ind. 147, 106 N. E. 2d 912, 32 A.L.R. 2d 875. See also the pertinent part of Burns' Ind. Stat., Anno,. § 4-3321, which is as follows:

'. . . no indictment shall be quashed, and no trial, judgment, order or proceeding shall be reversed or held invalid on the ground that the terms of this act have not been followed, unless it shall appear that such noncompliance was either in bad faith or was objected to promptly upon discovery and was probably harmful to the substantial rights of the objecting party.' "

In raising improper compliance with statutes on appeal, this Court has held that the appellant must show how he was prejudiced. In *Brown* v. *State* (1964), 245 Ind. 604, 201 N. E. 2d 281, this Court said:

"However, even if the statute is mandatory, as urged by appellant, he does not show how he was harmed by failure of the court to instruct or admonish the jury as to conduct during recess. The general rule is embraced in 9 West's Indiana Law Encyclopedia, Criminal Law, Ch. 30, § 751, page 242, as follows:

'A conviction will not be reversed for an error or a defect which does not prejudice the substantial rights of the defendant, where the record clearly discloses that the defendant had a fair and impartial trial.' "

See, also, *Lennox and Matthews, etc.* v. *Rozzelle* (1952), 231 Ind. 343, 108 N. E. 2d 621, and *Schwartzkopf* v. *State* (1965), 246 Ind. 201, 204 N. E. 2d 342.

The appellant has not shown how the method of impanelment of the grand jury was prejudicial to his rights, nor has he sustained his burden in showing that there was not a substantial compliance with the statute. At most he has only shown that the petit jury was merely impaneled at a later time and has not shown any adverse results of it.

The appellant having raised no valid errors, we affirm.

Arterburn, Hunter, Jackson and Mote, JJ., concur.

NOTE.—Reported in 232 N. E. 2d 882.