OWENS *v*. STATE OF INDIANA.

[No. 869S188. Filed February 17, 1971. No petition for rehearing filed.]

*William C. Erbecker, James Manahan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

PER CURIAM—Defendant was indicted for theft and found guilty as charged. Evidence introduced at the trial reveals that the defendant concealed a man's sweater in her dress and that she left Shoppers Fair Discount Department Store of Indianapolis without paying for the sweater. A witness to the theft, Willie Wells, testified that he saw Doris Owens in the dress department of the store and that he saw her put a man's sweater underneath her clothing. He watched her until she went to the front of the store and then he called a security officer. The store's security officer, Michael Beaver, testified that he followed the defendant out of the store and asked her if she had anything that she had failed to pay for as she came through the store's check-out counter. The witness testified that the defendant answered, "Yes, I have this blouse." Thereafter, she was placed under arrest.

Defendant first argues that during the trial, the judge followed a persistent course of judcial misconduct, over repeated objections, with results that were demeaning to the court, the judiciary, and the bar, and which were contrary to law. For example, the following colloquy took place during the trial between the court and the opposing counsel:

*"THE COURT:* State ought to raise this fellow Beaver's salary. Are you still with them? Here I was going to try to raise your salary, you did such a good job here.

*MR. CARTER:* State will recall Mr. Wells.

*THE COURT:* Come on, Mr. Carter. You've had all week to prepare this case.

*MR. CARTER:* I understand that, but we thought we would try the other case first, your Honor.

*THE COURT:* We can't try the other case first this is an earlier number.

*MR. CARTER:* As you may understand, we have some problems.

*THE COURT:* I don't see why. You've got so many witnesses in the courtroom. You have no problem. All you got to do is use your own little head a little bit.

*MR. CARTER:* That's right.

*THE COURT:* You've got two beautiful girls sitting in front of you that can answer all of your questions.

*MR. CARTER:* That's right, they're in the other case, that's why they're sitting there.

*THE COURT:* No, they're not. Just use your head, sir."

The court at another point felt it necessary to assist the Prosecutor in getting the value of a sweater into evidence during direct examination of Willie Wells:

"Q. Can you read the tag on that sweater?

*MR. RYAN:* To which we object.

*THE COURT:* Objection sustained. Object if he knows the value of it.

Q. Do you know the value of it?

*MR. RYAN:* To which we object.

A. $8.99.

*THE COURT:* Let the answer go out. Do you know the value of it ?

A. Yes.

*THE COURT:* He knows the value, now ask him.

Q. What is the value of that sweater?

*MR. RYAN:* I'm going to object.

A. $8.99.

*MR. RYAN:* I want to ask a preliminary question.

*THE COURT:* Over-ruled. Authority Wilson vs. State. Supreme Court says when a Judge sees an inept lawyer, such as the Prosecutor, he should help him.

*MR. RYAN:* Yes, but he's got a witness that's talking out of his mouth and doesn't know what he's talking about . . .

*THE COURT:* No.

*MR. RYAN:* And doesn't know what he's talking about and being lead by . . .

*THE COURT:* Over-ruled. Authority Wilson verses State, about 220 Indiana."

Concerning the defendant's taking the witness stand, the Court stated:

"*MR. CARTER:* Your Honor, I'm going to object. These questions are all leading.

*THE COURT:* Over-ruled. You ought to be thankful he put her on."

We do not commend such running commentaries by a judge who is clothed with the robe and behind the bench, with all the perogatives adhering to such an office, particularly when they are made against a young attorney and one who is unable to retaliate in kind. Tolerance and understanding are much more worthy judicial attitudes under the circumstances.

Initially, we point out that the trial was conducted without a jury and that therefore any remarks made by the judge in the course of the trial could not be said to have prejudiced the defendant's case in the minds of legally untrained triers of fact. The basic issue is whether defendant received a fair and impartial trial. Defendant contends she received a hearing punctuated with quips and running commentary, judicial intrusion, and premature resolution of the most vital issue of fact. We point out, however, that the trial judge in actuality was critical of the prosecuting attorney. No evidence is apparent that defendant received an

unfair trial by reason of certain comments by the judge, though we would question the propriety of some of the statements. The evidence was conclusive that the defendant was guilty of shoplifting from the store.

Defendant next claims that there was a fatal variance between the specific allegations of stolen property which appeared in the indictment and the proof made at trial in that the indictment alleged the theft of one blouse, two pairs of men's pants, and three men's sweaters. Evidence of the theft of one of the men's sweaters was introduced in court. Since the theft of just one sweater would be sufficient for a conviction of theft, no further proof was necessary.

A certificate from the Secretary of State established that Shoppers Fair Discount Department Store of Indianapolis existed as of July 4, 1967. The theft occurred August 16, 1967. Since witnesses Willie Wells and Michael Beaver both testified that they worked for Shoppers Fair on August 16, 1967, the existence of the store on that date is recognized. Willie Wells further testified that the sweater taken by the defendant was from the Shoppers Fair Discount Department Store. This is sufficient to prove the allegation in the indictment that the property was in the possession of Shoppers Fair Discount Department Store. *Thomason v. State* (1970), 255 Ind. 326, 263 N. E. 2d 725.

Officer Beaver stated at the trial that he apprehended the defendant just outside the doors of the store. Before advising her of her constitutional rights, Officer Beaver proceeded to ask the defendant if she had anything in her possession that she failed to pay for at the counter. The defendant pulled out a blouse from her purse and said that she had not paid for it. We can only conclude that this testimony was properly admitted. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 requires that warnings be given before the onset of questioning if the situation is one of "custodial interrogation". In the case before us, defendant was merely

asked a question that in fact could have cleared up an inadvertent mistake. *Miranda* says:

"General on-the scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Miranda* v. *Arizona* (1966), 384 U. S. 436, 477, 86 S. Ct. 1602, 1629, 16 L. Ed. 2d 694, 725.

The *Miranda* warning was given after the store manager indicated to the security officer that he would prosecute, the warning not having been necessary prior to that time.

Judgment affirmed.

DeBruler, J., concurs in result with opinion, in which Prentice, J., concurs.

### CONCURRING IN RESULT

DeBruler, J.—I concur in the opinion of the majority in its resolution of the issues of the alleged misconduct of the trial judge and the alleged insufficiency of the evidence. I must depart from the majority, however, in resolving the issue of whether a certain statement made by the appellant would be deemed inadmissible under the ruling of *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

The appellant was allegedly seen to have hidden some store merchandise upon her person. A witness, Willie Wells, a store employee, testified that he had personally observed the appellant appear to be shoplifting some merchandise and that he immediately contacted Officer Beaver, the arresting officer. Officer Beaver followed the appellant outside the store where he stopped her and asked her whether she "had anything in her possession that she had failed to pay for at the counter". This question posed by Officer Beaver to the appellant was elicited on the direct examination of Officer Beaver by the State's prosecution. The appellant's incriminating response

to this question was brought forth only upon the defendant's cross-examination of the witness Officer Beaver during the following colloquy:

"Q. Now then you said then that you asked her some questions, what did you ask her?

A. I asked her if she had anything she had failed to pay for, as she came through the store . . . through the stand, and she said 'Yes, I have this blouse.' "

Appellant contends that her Fifth Amendment rights were violated in that evidence was introduced which was obtained prior to the warning required by *Miranda* v. *Arizona, supra*. The record shows that Officer Beaver did give the required warnings after placing the appellant under arrest subsequent to the conversation described above.

The question then is whether the statement made prior to the warnings was inadmissible as being in violation of the holding of *Miranda*. The majority holds that *Miranda* is without application in this instance as the officer's question was within the ambit of "general on-the-scene questioning" which is not affected by the *Miranda* holding. The majority further states that the *Miranda* warning was not necessary prior to the time when the store manager indicated he intended to prosecute. I cannot agree. The decision of a prosecuting witness to "prosecute" is neither a necessary nor a sufficient element in the actual prosecution of an accused. Nor can any such decision, regardless of by whom it is made, be the touchstone in determining when the Fifth Amendment rights of the accused attach themselves.

In the case at bar, whether the statement elicited from the appellant was inadmissible is decided by determining whether the statement was made during custodial interrogation.

The language of the Supreme Court in *Miranda* deserves quotation:

"The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of

procedure safeguards effective to secure the privilege against
self-incrimination. By custodial interrogation, we mean
questioning initiated by law enforcement officers after a
person has been taken into custody or otherwise deprived
of his freedom of action in any significant way. (This is
what we meant in Escobedo when we spoke of an investiga-
tion which had focused on an accused.)"

While the determination of when custodial interrogation be-
gins is not without difficulty, I believe the facts in the case
at bar do not lend themselves to a conclusion that the officer's
question to the appellant falls within the meaning of general
on-the-scene questioning and, therefore, outside the scope of
*Miranda.*

As a result of information received from a store employee,
Officer Beaver had reason to believe that the appellant had
shoplifted certain goods from the store. He followed her out-
side the store, stopped her and asked her whether she had
any articles on her which she had failed to pay for before
she left the store. At that time Officer Beaver's attention was
focused upon the appellant not as a general citizen who might
assist in the fact finding process surrounding an unsolved
crime but rather as a person who was herself suspected of
just having committed a felony. Certainly, a question posed
to a *suspect* which invites an incriminating answer cannot be
termed general on-the-scene questioning. Any such question
posed to suspects by the police must be preceded by the warn-
ings and waiver required by *Miranda.*

Turning to the issue of whether the statement by the ap-
pellant that "Yes, I have this blouse" was erroneously ad-
mitted, I must conclude that it was not. As stated above this
statement was not brought out on direct examination of Officer
Beaver. Upon cross-examination the appellant's counsel asked
Officer Beaver only what question he had asked the appellant.
Officer Beaver replied with both the question and the appel-
lant's answer. A motion to strike Officer Beaver's answer
as not being responsive to the question may have been appro-
priate but it was not forthcoming. An earlier motion to sup-

press all further evidence of Witness Beaver, a later motion for finding of Not Guilty and discharge were properly overruled. In absence of a move to strike the answer of the witness, I believe it was not erroneously admitted and, therefore, concur in result reached by the majority.

Prentice, J., concurs.

NOTE.—Reported in 266 N. E. 2d 612.